**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **DeVIVO ASSOCIATES, INC. and** | ) | **Case No. 1:19-cv-02593-PKC-JO** |
| **DENNIS J. DeVIVO,** | ) | |
| | ) | **Judge Pamela K. Chen** |
| Plaintiffs, | ) | **Magistrate Judge James Orenstein** |
| v. | ) | |
| | ) | |
| **NATIONWIDE   MUTUAL   INSURANCE** | ) | |
| **COMPANY**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs DeVivo Associates, Inc. and Dennis J. DeVivo (collectively, "DeVivo Associates" or "Mr. DeVivo"), for their action against Nationwide Mutual Insurance Company ("Nationwide"), on behalf of themselves and on behalf of a similarly-situated Class, allege as follows:

## I.      THE NATURE OF THIS ACTION

1.      The Defendant, Nationwide, operates a property and casualty insurance business throughout the United States, using a distribution system with two different types of independent contractors: "exclusive" and "independent" agents.

2.      The exclusive agents have agreed to place clients eligible for Nationwide insurance products exclusively with Nationwide over the course of an entire career. Over the past four decades, individual exclusive agents have produced premium totals for Nationwide typically exceeding tens of millions and up to hundreds of millions of dollars.

3.      In exchange for that long-term exclusive commitment and resulting high premium amounts, exclusive agent contracts include major deferred compensation provisions, called Agency

Security Compensation ("ASC") Plans in most cases, which increase over the life of the contract as the agent's business grows and are payable upon retirement or other cancellation of the contract. Nationwide characterizes these plans as "substantial deferred income" and a "unique" incentive for committing to a long-term exclusive relationship. Nationwide has assured the exclusive agents in the past that Nationwide is "committed to continuing these valuable benefits."

4.     The independent agents do not have an exclusive commitment to Nationwide. Under their contracts, they are free to place clients eligible for Nationwide insurance products with Nationwide or with other carriers. With no exclusivity requirement, the independent contracts do not have any corresponding post-cancellation deferred compensation plan.

5.     In April of 2018, Nationwide announced that it would end all of its exclusive agent contracts as of July 1, 2020 and replace all of the exclusive contracts with independent contracts. As Nationwide's existing exclusive and independent contracts are written, payment of accumulated deferred compensation amounts would be due upon Nationwide's cancellation of the exclusive contracts, and the exclusive agents, under new independent contracts, would have the freedom to place business with other carriers.

6.     Over the ensuing months, however, Nationwide has demonstrated that it does not intend to follow the existing contracts as written. Instead, Nationwide is pressuring the exclusive agents to enter into a program Nationwide has devised called the "Agent Contract Exchange" ("ACE") Program, under which the exclusive agents would have to agree to ***purchase*** the right to operate as independent agents under a new form of contract (at a price calculated on the basis of an entire year's earnings) and also subject themselves to severe ***restrictions*** imposed by additional separate contracts which would keep them under Nationwide's control for years, even though they would be nominally classified by Nationwide as "independent" agents.

7.      As part of its pressure campaign, Nationwide has announced that it will eliminate a major component of the agents' ASC Plans as of August 1, 2019, by a "unilateral amendment" of the exclusive contracts. The only way exclusive agents can preserve this benefit, which has been earned over years of exclusive service, is by agreeing by June 14, 2019 to purchase the right to continue under the onerous terms and conditions of the ACE Program or take early retirement and relinquish their businesses by July 31, 2019. Nationwide emphasizes that failure to agree to one or the other will result in total loss of the benefit when the exclusive contracts end on July 1, 2020.

8.      For those agents who might try to weather the pressure, reject the ACE Program, and finish the exclusive contract as written, Nationwide has recently stated that, upon cancelling the contract, it will use post-cancellation restrictions to disable agents who attempt to service their clientele as independents, even though it is Nationwide that is carrying out a mass at-will termination to force the agents to enter into new contractual arrangements.

9.      This class action for declaratory and injunctive relief challenges the legality of the tactics that Nationwide is using to force the ACE Program or early retirement on the ***entire class*** of exclusive agents -- elimination of a component of the ASC Plans prior to cancellation and disabling the agent's continuing business after cancelling the contracts without cause. By coercing the exclusive agents to "buy" the right to act as independent agents after Nationwide switches the contracts, Nationwide is breaching the existing contracts with the proposed Plaintiff Class. By threatening to terminate the exclusive agents and disable them with restrictive covenants if they fail to enter into new and more onerous business arrangements that are not contemplated by the existing contracts, Nationwide is in further breach of the existing contracts.

10.     The Complaint seeks expedited treatment with respect to these legal issues, which are pure contract interpretation questions, because of the upcoming deadlines imposed by Nationwide set forth in ¶ 7, *supra*, which threaten irreparable damage.

11.     The relief sought does not preclude any member of the class from ***voluntarily*** entering into the ACE Program and accepting its terms and conditions.

## II.     JURISDICTION AND VENUE

### Individual Jurisdiction

12.     The Defendant Nationwide Mutual Insurance Company is a incorporated under the laws of the State of Ohio and has its principal place of business in Columbus, Ohio.

13.     Plaintiff DeVivo Associates, Inc. is organized under the laws of the State of New York with its place of business in the Eastern District of New York.

14.     Plaintiff Dennis J. DeVivo is a citizen of the State of New York.

15.     Complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has original jurisdiction of the case under 28 U.S.C. § 1332(a).

16.     Venue is proper in the Eastern District of New York. The business in question is located in this District, the governing contract was made in this District,  and the events giving rise to this action are having their impact in this District.

### Class Action Jurisdiction

17.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005, which provides that this Court shall have jurisdiction of class actions for claims arising under state law when the number of putative class members exceeds 100 persons, when fewer than a third of the class members are citizens of a single

state, including the state in which Defendant is incorporated, and where the amount in controversy from the claims of all class members exceeds in the aggregate the sum of $5,000,000, exclusive of interests and costs.

18.     This Court may assert jurisdiction of this action under 28 U.S.C. § 1443(d) before a class is certified.

19.     As set forth in the class allegations in ¶¶ 50 - 60, *infra*, and pursuant to the jurisdiction of this Court under 28 U.S.C. § 1332(d), Plaintiffs seek to certify a class and subclass of all exclusive agents similarly situated like themselves pursuant to Fed. R. Civ. P. 23(b)(2), for declaratory and injunctive relief.

20.     As set forth in ¶¶ 50 - 60, *infra*, Plaintiffs meet all the prerequisites for a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

21.     The members of the proposed class reside throughout the country, and well in excess of two thirds of the proposed class members are diverse in terms of state citizenship from the Defendant Nationwide, which is incorporated in Ohio.

22.     The claims in this action can be resolved under the laws of the state of New York, which are comparable to and not materially different from other state laws with respect to a breach of contract.

23.     Acting within its jurisdiction, this Court may award the declaratory and injunctive relief requested in this action pursuant to 28 U.S.C. § 2201, *et seq*.

## III.     THE PARTIES

24.     Defendant Nationwide Mutual Insurance Company is a large diversified insurance and financial services organization with many subsidiaries and affiliates, conducting business throughout the United States.

25.     Plaintiff Dennis J. DeVivo has been a Nationwide exclusive agent since 1976, selling Nationwide Insurance policies for more than 42 years. Mr. DeVivo has been operating his business as DeVivo Associates, Inc. since 1993 pursuant to a Corporate Agency Agreement, attached as EXHIBIT A.

26.     Plaintiff DeVivo Associates, Inc. has been a family business since 1992. Dennis J. DeVivo is President of the agency and has been at the helm since its inception. Mr. DeVivo's three sons -- James M. DeVivo, John M. DeVivo and Matthew J. DeVivo -- joined the family insurance agency business after graduating from college in 2001, 2002, and 2006, respectively.

## IV.     THE EVENTS GIVING RISE TO THIS ACTION

27.     On April 16, 2018, Nationwide announced a unilateral at-will termination of all its exclusive agent contracts, effective July 1, 2020. Specifically, Nationwide stated that "after July 1, 2020, Nationwide will no longer have exclusive agent contracts" and will "transition [its exclusive agents] to an independent agency distribution model."

### Nationwide's ACE Program

28.     Beginning with the April 16, 2018 announcement and continuing over the ensuing months, Nationwide has gradually introduced its "Agent Contract Exchange" ("ACE") Program, initially characterizing it as an "asset" sale which would assist the agents after they moved to the independent contract by giving them "policy assets" that they could sell or use as collateral in the future.

29.     More recently, Nationwide has conceded that what the agent is really purchasing via the ACE Program is an intangible right to sell insurance for other carriers besides Nationwide, *i.e.*, to actually function as an independent agent.

30.     The ACE Program is presented as a set of three purchase "options," with the price calculated as a function of the agent's gross annual commissions at December 31, 2018. Each of the options is accompanied by a set of restrictive covenants which keep the agent under Nationwide's control for periods of years after supposedly becoming an independent agent. The restrictions and controls are more onerous and lengthy depending on how much it costs the agent to purchase the right to function as an independent agent. The more costly the purchase, the shorter the restrictions. (EXHIBIT B, May 10, 2018 communication from Nationwide to the Exclusive Agents, Subject: "INFORMATION ABOUT RESTRICTIVE COVENANTS FOR ACE OPTIONS.")

31.     Other Nationwide independent agents are not required to purchase the right to sell for other carriers or placed under such restrictions. The right to represent multiple carriers is a defining feature of an independent contract, regardless of whether the agent has exercised an ACE option or not.

**Eliminating A Component Of The ASC Plan Via "Unilateral Amendment"**

32.     Nationwide is pressuring the agents to either purchase the right to continue or retire early by announcing that it will phase out a major component of the ASC Plan, beginning August 1, 2019. That component, called "Extended Earnings," is an amount equal to the renewal service commissions earned by the Agent over the last 12 calendar months preceding the cancellation.

33.     When Nationwide first announced that it intended to eliminate the Extended Earnings in the final year before the July 1, 2020 termination, it assured the exclusive agents that this was "a separate business decision from our transition from exclusive to independent agent contracts." At the time, Nationwide's explanation for phasing out the payments in the last year of the exclusive contracts was that deferred compensation plans "are not part of contracts in the independent agent channel."

34.     More recently, with the August 1, 2019 commencement of the phase-out period

approaching, Nationwide has delivered this ultimatum:

> **If you do not select one of the three (3) ACE Options or voluntarily cancel your EA Agreement on or before June 30, 2020, Nationwide will cancel your EA agreement effective July 1, 2020 which is after the phase out of non-DCIC deferred compensation.**

(Nationwide March 15, 2019 Communication re "Exclusive Agent Transition Program," third

paragraph, attached as EXHIBIT C (emphasis in original).)

35.     This is followed by an explanation suggesting that the Agent can avoid some or all

of the phase-out by selecting an ACE option or retiring as soon as possible:

> ***Many of you have asked questions specific to how Nationwide's decision to phase out the non-DCIC deferred compensation program impacts the ACE Option you ultimately choose.*** As Nationwide communicated to you on April 16 and 19, 2018, the non-DCIC deferred compensation program will be eliminated as of July 1, 2020. Any agent who cancels his/her EA Agreement ***after July 30, 2019 but before July 1, 2020*** will continue to earn non-DCIC deferred compensation in accordance with the terms of the EA Agreement ***as revised for the phase-out*** of the non-DCIC deferred compensation programs.

(*Id*., emphasis added.) (The term "non-DCIC deferred compensation" refers primarily to Extended

Earnings and also includes a smaller set of other cancellation payments attached to certain newer

contracts.)

36.     EXHIBIT C was directed to the entire exclusive agent class on March 15, 2019. In

other separate and informal communications and meetings, however, Nationwide is stating that an

exclusive agent who wishes to continue in business ***will be denied his/her entire extended earnings***

***unless the agent agrees to the most expensive purchase option in the ACE Program*** ("ACE Option

1 - Early Purchase," p. 2 of Exhibit B to the Amended Complaint).

**Using Post-Cancellation Restrictions To Disable Agents After A Termination At-Will On July 1, 2020**

37.     If an exclusive agent resists Nationwide's pressure and refuses to select an ACE option, Nationwide has stated recently that it will terminate that agent's contract on July 1, 2020 and "take their business."

38.     Explaining "take their business," Nationwide states the agent "will not be able to service that business or deal with those customers."

39.     Asked what would stop the agent from placing his clients elsewhere with other companies, Nationwide states that the contracts have "non-solicitation and/or non-compete clauses."

40.      Nationwide specifies that "one of the restrictions we would look at" would be the forfeiture for competition provision in the ASC Plan.

41.     Nationwide describes the forfeiture for competition provision as a type of "non-compete and non-solicitation" which would affect the agent's "access to his agency security compensation."

42.     Further explaining the use of the forfeiture for competition provision, Nationwide states that the agent may not use "anything he has in his data and systems, which is required to be returned under [the forfeiture for competition provision]."

## V.     THE INDIVIDUAL PLAINTIFFS: DeVIVO ASSOCIATES, INC. AND DENNIS J. DeVIVO

43.     Dennis J. DeVivo has been a Nationwide exclusive agent for over 42 years, as an employed agent beginning in 1976, under an individual Agent's Agreement from 1983 - 1993, and under a Corporate Agency Agreement as DeVivo Associates, Inc. from 1993 to the present. During the 26 years Mr. DeVivo has been operating under the Corporate Agency Agreement, the estimated premium amount he has generated for Nationwide exceeds $100 million.

44.     The amount Mr. DeVivo would have to finance in order to select option 1 of the ACE Program, the Option with the shortest restrictions (see ¶ 30 and EXHIBIT B, *supra*), would be approximately $870,000 – just to be allowed to operate as an independent agent when Nationwide switches the contracts.

45.     The amount of Mr. DeVivo's Extended Earnings at risk because of Nationwide's "unilateral amendment" is approximately $692,000. Even if Mr. DeVivo were to agree to an early purchase next month to save his Extended Earnings, he would not get the benefit of his Extended Earnings for years. That is because of the restrictions Nationwide has attached to the ACE Options, which range from a minimum of 5 years under Option 1 to virtually indefinite periods at the other end of the Options. (*Id*.) Nationwide takes the position that IRC § 409A (controlling the payment of non-qualified deferred compensation (NQDC)) applies to Extended Earnings and, because § 409A prohibits payments of NQDC until a complete "separation from service" has occurred, Nationwide states that it will keep Mr. DeVivo's Extended Earnings until he finally escapes from the restrictions years into the future.

### Relevant Provisions of Mr. DeVivo's Corporate Agency Agreement

46.     EXHIBIT A, the governing Corporate Agency Agreement, designates DeVivo Associates, Inc. as an independent contractor for all purposes (¶ 1), mandates that DeVivo Associates will "represent Nationwide exclusively in the sale and service of insurance" (¶ 4), and states the Agreement may not be "changed, altered, or modified" except by a "writing signed by [DeVivo Associates] and an officer of Nationwide" (¶ 16).

47.     The ASC Plan is set forth in detail in ¶¶ 11(a) through 11(h), under the heading "Agency Security Compensation." The computation provisions are set out in ¶¶ 11(a) and 11(b) (Extended Earnings). The payment provisions are set out in ¶¶ 11(c) - 11(e).

48.     Paragraph 11(f), titled "Cessation of Agency Security Compensation," is, essentially, a forfeiture for competition provision stating that post-termination competition by DeVivo Associates will result in loss of the entire ASC package.

49.     Paragraph 11(h), titled "Amendments and Termination," states Nationwide's intent to continue the ASC Plan indefinitely, but reserves the right to amend or terminate the plan "to protect the Agency and Nationwide against unforeseen conditions":

> Nationwide hopes and expects to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions. In order to protect the Agency and Nationwide against unforeseen conditions, however, the right to amend or terminate this plan is necessarily reserved by Nationwide. Nationwide may terminate this plan by notification, at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination, however, can alter or modify rights or benefits received or credited prior to such change or modification.

## VI.    CLASS ACTION ALLEGATIONS

50.     Plaintiffs seek to certify a class and subclass for declaratory and injunctive relief pursuant to Fed. R. Civ P.  23(b)(2). The proposed class is as follows: all exclusive agents of Nationwide who are entitled to "non-DCIC deferred compensation" as defined in ¶ 35, *supra*, and whose rights to that compensation may be cancelled by Nationwide absent declaratory and/or injunctive relief. In Count 1, the members of the class as a whole seek to bar cancellation of the "non DCIC deferred compensation" on the ground that in cancelling such compensation and denying them the fruits of their contracts, Nationwide is breaching an implied covenant of good faith and fair dealing. In Count 2, Plaintiffs seek to certify a subclass of agents who, like the Plaintiffs, seek the same relief on the **additional** grounds that Nationwide is breaching a specific written guarantee in contracts used by Nationwide prior to 2004 that such compensation will not be disturbed except when Nationwide "necessarily" must do so to "protect" the agents and Nationwide against

"unforeseen conditions." In Count 3, the members of the class as a whole seek to bar Nationwide from enforcing non-compete and non-solicitation provisions if they are terminated through no fault of their own, as Nationwide has threatened to do on July 1, 2020.

51.     Plaintiffs seek to certify a class for declaratory and injunctive relief pursuant to Fed. R. Civ. P. Rule 23(b)(2) on the ground that Nationwide has acted on grounds generally applicable to every member of the class and subclass and the claims of the class and subclass can be resolved without consideration of individual issues.

52.     Plaintiffs meet all the conditions for maintenance of a class action pursuant to Fed. R. Civ. P. 23(a) and 28 U.S.C. § 1332(d), with respect to numerosity, commonality, typicality and adequacy of representation.

53.     The class consists of more than 100 persons as required by 28 U.S.C. § 1332(d).

54.     The class is too numerous to join. Plaintiffs estimate that there are over 1,000 persons in the proposed class of exclusive agents.

55.     Fewer than a third of the proposed class members reside in a single state, including the state where Nationwide is incorporated.

56.     More than two thirds of the proposed class are diverse in terms of state citizenship with Nationwide, which is incorporated in Ohio.

57.     The questions of law raised in this Complaint are common to the class as a whole.

58.     Furthermore, a class action is also appropriate because these questions can be resolved under the laws of a single state, namely New York, which do not differ materially from other state laws for purposes of resolving the claims here.

59.     The claims of Plaintiffs DeVivo Associates, Inc. and Dennis J. DeVivo and Nationwide's defenses to same are typical of or identical with those of other class members.

60.     Plaintiffs will fairly and adequately represent the interests of the class and have obtained legal counsel experienced in class actions.

## VII.    CAUSES OF ACTION

61.     Nationwide is engaged in an overall scheme to breach the exclusive agent contracts, including their covenants of good faith and fair dealing, by coercing the exclusive agents into what is, in effect, a compulsory novation of their existing contracts, *i.e.*, substitution of an onerous, expensive new business arrangement for their existing contracts. The new arrangements which would be mandated by the ACE Program are not even remotely contemplated by the existing exclusive contracts.

62.     The exclusive agents do not quarrel with Nationwide's stated objective of replacing the exclusive contracts with contracts based on the "independent agency distribution model" on July 1, 2020, but the requirements described in the ACE Program (an expensive "purchase" of the right to represent multiple carriers and long-term "restrictive covenants" keeping the agents under Nationwide's control) are not part of the "independent agency distribution model."

63.     The coercive tactics now threatened by Nationwide to force exclusive agents into the ACE Program (eliminating the Extended Earnings portion of the ASC Plan in the last year of the contract, then disabling any remaining non-cooperative agents at the end of the year with an at-will termination accompanied by enforcement of competitive restrictions) are contrary to both the express and implied provisions of the exclusive agent contracts.

# COUNT 1

## BREACH OF CONTRACT

### Eliminating The Extended Earnings Component Of The ASC Plan (Entire Class)

64.     The allegations of the preceding Paragraphs 1 - 63 are hereby incorporated by reference.

65.     Nationwide has announced its intention to phase out the exclusive agents' Extended Earnings beginning August 1, 2019 by declaring a "unilateral" amendment of the exclusive contracts under authority of the paragraph in each contract addressing amendments and terminations, which gives Nationwide authority to amend the plan.

66.     Nationwide's position is that any agent who wishes to continue in business ***will be denied his/her entire extended earnings*** unless the agent agrees to the most expensive purchase option in the ACE Program and transfers the full purchase price to Nationwide by June 21, 2019.

67.     Nationwide is in breach of an *implied* covenant of good faith and fair dealing which applies to the performance of every contract. The actions taken by Nationwide would deprive Mr. DeVivo and the similarly situated class of the fruits of their contracts which have been substantially performed. After receiving the benefit of a total of 43 years of service from Mr. DeVivo and more than $100 MM in premiums in just the last 26 years, Nationwide proposes to take away his contractually-mandated Extended Earnings in order to force him into a predatory novation of his contract -- a breach of the implied covenant of good faith and fair dealing.

## COUNT 2

## BREACH OF CONTRACT

### Eliminating The Extended Earnings Component Of The ASC Plan (Subclass)

68.     The allegations of the preceding Paragraphs 1 - 67 are hereby incorporated by reference.

69.     Nationwide has announced its intention to phase out the exclusive agents' Extended Earnings beginning August 1, 2019 by declaring a "unilateral" amendment of the exclusive contracts under authority of the paragraph in each contract addressing amendments and terminations.

70.     In Mr. DeVivo's contract that is Paragraph 11.h, which states in relevant part:

> Nationwide hopes and expects to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions. In order to protect the Agency and Nationwide against unforseen conditions, however, the right to amend or terminate this plan is necessarily reserved by Nationwide.

(EXHIBIT A, ¶ 11.h.) The members of the subclass have the same language.

71.     Nationwide's position is that any agent who wishes to continue in business **will be denied his/her entire extended earnings** unless the agent agrees to the most expensive purchase option in the ACE Program and transfers the full purchase price to Nationwide by June 21, 2019.

72.     None of the explanations Nationwide has given for its unilateral amendment to eliminate Extended Earnings could be taken as an "unforeseen condition" which "necessarily" requires Nationwide to eliminate Mr. DeVivo's Extended Earnings "in order to protect [Mr. DeVivo] and Nationwide." To the contrary, Nationwide intends to eliminate the Extended Earnings and deny Mr. DeVivo's Agency the fruits of the contract in reprisal for a failure to adopt the most expensive ACE option.

73.     By eliminating Mr. DeVivo's Extended Earnings for that purpose, Nationwide is in breach of Mr. DeVivo's contract, which expressly curtails Nationwide's authority to amend those benefits for any end inconsistent with protecting the interest of Mr. DeVivo, as well as Nationwide.

74.     In addition, by the acts set forth above, Nationwide is in breach of an express and specific covenant of good faith and fair dealing with respect to amendments that is set out in Paragraph 11.

75.     In addition, by promising to make "every effort ... to meet future conditions," and "to protect the Agency ... against unforeseen conditions," Nationwide represented to the agents that it would act as a guardian in a position of trust, protecting their interests, and assumed a legal duty to do so. By abusing that trust, Nationwide breached a fiduciary duty that arose by operation of law under the particular circumstances to make "every effort" to preserve Mr. DeVivo's contractual rights and to forego gratuitous or self-interested dealing for itself.

76.     Nationwide is also in breach of the *implied* covenant of good faith and fair dealing which applies to the performance of every contract, since the actions taken by Nationwide would deprive Mr. DeVivo of the fruits of his contract which he has substantially performed. After receiving the benefit of a total of 43 years of service from Mr. DeVivo and more than $100 MM in premiums in just the last 26 years, Nationwide proposes to take away his contractually-mandated Extended Earnings in order to force him into a predatory novation of his contract -- a breach of the implied covenant of good faith and fair dealing.

## COUNT 3

## BREACH OF CONTRACT

### Using Post-Cancellation Restrictions To Disable Agents Who Are Terminated On July 1, 2020

77.     The allegations of the preceding Paragraphs 1 - 76 are hereby incorporated by reference.

78.     Nationwide's recently announced plan for exclusive agents who resist Nationwide's pressure and refuse to select an ACE option -- putting the agent out of business after the July 1, 2020 termination using non-compete and non-solicitation clauses (¶¶ 37 - 42, *supra*) -- is unreasonable as a matter of law. The unilateral termination of the exclusive contracts that Nationwide has announced for July 1, 2020 is a mass, at-will termination, which cannot serve as the basis for enforcement of non-competition and non-solicitation clauses designed to economically cripple agents like Mr. DeVivo and deny other insurance carriers the agent's services.

79.     Nationwide's plan also breaches the covenant of good faith and fair dealing. Nationwide's termination is not a good faith termination for any legitimate business purpose, but a bad-faith retaliation without cause against agents, like Mr. DeVivo, who do not wish to accept the novation of their existing contracts that Nationwide is demanding. Nationwide's failure to act in good faith precludes the application of non-compete and non-solicitation provisions following the termination.

80.     Finally, mutual agreement to non-compete/non-solicitation provisions in the exclusive agent contracts was based upon Nationwide's ongoing use of exclusive agents, with whom a terminated exclusive agent might compete. With the elimination of the exclusive agent contracts altogether, there is no longer any contractual basis for protecting such agents. Under these

circumstances, the non-compete/non-solicitation provisions serve no purpose except to force the terminated exclusive agents ***as a group*** into a new and unfavorable contract against their will. Such a bad faith use of restrictive covenants, which were intended for other purposes in individual cases, is oppressive and unreasonable and, under these particular circumstances, such restrictive covenants are unenforceable as a matter or law.

**PRAYER FOR RELIEF**

The individual Plaintiffs, DeVivo Associates, Inc. and Dennis J. DeVivo, request that this Court certify the proposed class with the appropriate subclass pursuant to Fed R. Civ. P. 23(b)(2) and award to the individual Plaintiffs and the class and subclass the proposed declaratory, injunctive, and other relief:

(a)  a judgment declaring that Nationwide's announced unilateral amendment eliminating Extended Earnings during the year preceding the announced July 1, 2020 termination is an anticipatory breach of the implied covenant of good faith and fair dealing in the Corporate Agency Agreement (Count 1 (class));

(b)  a judgment declaring that Nationwide's announced unilateral amendment eliminating Extended Earnings during the year preceding the announced July 1, 2020 termination is an anticipatory breach of the express provisions of the Corporate Agency Agreement, including a specific covenant of good faith and fair dealing, and of the legal duty that Nationwide assumed by placing itself in a position of trust and guardianship (Count 2 (subclass));

(c)  an injunction prohibiting Nationwide from eliminating Extended Earnings prior to the announced July 1, 2020, termination, with respect to the entire class (Count 1) and the subclass (Count 2);

(d)     a judgment declaring that Nationwide's announcement of an at-will termination of the Corporate Agency Agreement on July 1, 2020 accompanied by enforcement of non-compete and non-solicitation provisions, if the Agent does not select an ACE option, is an anticipatory breach of the Corporate Agency Agreement and the implied covenant of good faith and fair dealing in that Agreement;

(e)     an injunction prohibiting Nationwide from enforcing non-compete or non-solicitation provisions following an at-will termination of the Corporate Agency Agreement;

(f)     reasonable attorney fees and costs of this action; and

(g)     such further equitable relief deemed just and proper by the Court.

## REQUEST FOR EXPEDITED TREATMENT

The declaratory judgments requested in Counts 1 - 2 will serve a useful purpose by resolving existing and imminent controversies between the parties in a practical and efficient manner, expediting the ascertainment of rights, stabilizing legal relations between the parties, and dissipating uncertainty. Declaring the rights and obligations of parties involved in existing and imminent contractual disputes is a classic use of the Declaratory Judgment action, which is designed to expedite the ascertainment of rights and dispel the types of uncertainty that can accompany ambiguous contractual assertions.

DeVivo Associates, Inc. and Dennis J. DeVivo, on behalf of themselves and the class and subclass, request expedited treatment with respect to the legal issues identified in Counts 1 - 3, which are contract interpretation questions, because of deadlines imposed by Nationwide, including the August 1, 2019 date for elimination of Extended Earnings and a June 14, 2019 deadline that

Nationwide has set for agents to commit to a contract selecting Option 1 to protect Extended Earnings, followed by a June 21, 2019 deadline to transfer the entire "purchase price" to Nationwide.

Mr. DeVivo and the class members face irreparable injury under these deadlines, for which preliminary injunctive relief would be appropriate. If they do not select one of the ACE options by the required deadlines, they face even at this early stage the disruption of their client relationships, loss of good will, and severe limitations on their ability to make the transition to independent agents and continue serving the clientele they now have.

DATED:        May 23, 2019                Respectfully submitted,

                                         /s/ Jeanne E. Mirer
                                         **JEANNE E. MIRER**
                                         **MIRER MAZZOCHI & JULIEN, PLLC**
                                         150 Broadway, Suite 1200
                                         New York, NY 10038
                                         T:      (212) 231-2235
                                         E:      jmirer@mmsjlaw.com

                                         /s/ William P. Tedards, Jr.
                                         **WILLIAM P. TEDARDS, JR.**
                                         (USDC EDNY *PHV* WT2146)
                                         1101 30th Street, NW, Suite 500
                                         Washington, DC 20007
                                         T:      (202) 797-9135
                                         E:      BT@tedards.net

                                         **THOMAS H. GEOGHEGAN**
                                         **MICHAEL P. PERSOON**
                                         **DEPRES, SCHWARTZ & GEOGHEGAN, LTD**.
                                         (*Pro Hac Vice* motions to be submitted)
                                         77 West Washington Street, Suite 711
                                         Chicago, IL 60602-3271
                                         T:      (312) 372-2511
                                         E:      tgeoghegan@dsgchicago.com
                                                 mpersoon@dsgchicago.com

                                         Counsel for Plaintiffs
                                         DeVivo Associates, Inc. and Dennis J. DeVivo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2019, the foregoing document was filed with the Clerk of the Court via CM/ECF and thereby served on all counsel of record in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service.

I HEREBY FURTHER CERTIFY that as of this filing, no appearance has been entered by counsel for Defendant Nationwide Mutual Insurance Company. The foregoing document will be served on Defendant as follows:

Nationwide Mutual Insurance Company
New York State Superintendent of Financial Services
c/o Mary Borcsak
New York State Department of Financial Services
1 Commerce Plaza, 20th Floor
Albany, NY 12257

*As Agent for Superintendent of Financial Services and a person authorized by law to accept service on behalf of the Defendant Nationwide Mutual Insurance Company*

*/s/ William P. Tedards, Jr.*

**WILLIAM P. TEDARDS, JR.**
(USDC EDNY *PHV* WT2146)

AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF