```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
DEVIVO ASSOCIATES, INC. and DENNIS J.
DEVIVO,
                                                            MEMORANDUM & ORDER
                          Plaintiffs,                       DENYING PRELIMINARY
                                                            INJUNCTION MOTION
                 - against -                                19-CV-2593 (PKC) (JO)

NATIONWIDE MUTUAL INSURANCE
COMPANY,

                          Defendant.
---------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

Before the Court is the Motion for a Preliminary Injunction of Plaintiffs DeVivo Associates, Inc. and Dennis J. DeVivo ("DeVivo") (collectively, the "DeVivo Plaintiffs"), seeking to enjoin Defendant Nationwide Mutual Insurance Company ("Nationwide") from enforcing certain provisions of an Asset Transfer Agreement ("ATA") to be signed by Plaintiffs by May 30, 2020.[1] For the reasons set forth herein, the Court denies Plaintiffs' request for preliminary relief.

## BACKGROUND

### I. Relevant Facts

The Court assumes the parties' familiarity with the factual background in this matter and recites only those facts relevant to this decision. Briefly, Plaintiff DeVivo has been an exclusive agent for Defendant Nationwide for over 42 years. (Amended Complaint ("Am. Compl."), Dkt. 10, ¶ 43.) In April 2018, Nationwide announced that it would end all of its exclusive agent agreements as of July 1, 2020 and replace them with independent agent contracts. (*Id.* ¶¶ 5, 27.)

---

[1] Although this action has been brought as a putative class action, Plaintiffs' counsel represented at the May 26, 2020 oral argument that the request for preliminary relief is being sought solely as to the DeVivo Plaintiffs and not on behalf of the putative class.

1

As part of this transition, all exclusive agents were required to choose one of three new contract options as part of the Agent Contract Exchange ("ACE") program. (*Id.* ¶¶ 34–37; *see also* Exclusive Agent Transition Program, Dkt. 10-3, at ECF[2] 2 (describing the three options).) Under these three options, the agent voluntarily cancels the exclusive agent agreement with Nationwide and then: (1) purchases the Nationwide policies that the agent currently services and becomes an independent agent for Nationwide (Option 1 or the 7/1/2019 Purchase Option); (2) receives the Nationwide policies the agent currently services, along with a 1099 tax form in an amount that is 0.7 of the fair market value times the agency revenue, and becomes an independent agent for Nationwide (Option 2 or the 7/1/2020 Transfer Option); or (3) receives the Nationwide policies that the agent currently services, along with a 1099 tax form in an amount that is 0.35 of the fair market value times the agency revenue, and becomes an independent agent for Nationwide, but with a one-year restriction on soliciting business (Option 3 or the 7/1/2020 Transfer Option with Permanent Restrictions). (Exclusive Agent Transition Program, Dkt. 10-3, at ECF 2.) If an agent fails to choose one of the ACE options or fails to cancel their exclusive agent agreement by June 30, 2020, Nationwide will terminate that agreement on July 1, 2020. (Am. Compl., Dkt. 10, ¶ 34.) Any agent whose agreement is canceled on July 1, 2020 will not receive their accumulated Extended Earnings.[3] As of May 2019, Plaintiffs' Extended Earnings were valued at approximately $692,000. (*Id.* ¶ 45.)

---

[2] "ECF" refers to the pagination generated by the CM/ECF docketing system and not the document's internal pagination.

[3] Extended Earnings are a form of deferred compensation provided for under the exclusive agent contract that increase in value over the life of the contract and are payable upon retirement or other qualifying cancellation of the contract. (Am. Compl., Dkt. 10, ¶¶ 3, 32.) Nationwide unilaterally amended the exclusive agent agreement to eliminate the Extended Earnings benefit as of June 30, 2020 (*id.* ¶ 34), which is why agents who fail to select an ACE Program option by that date, and whose exclusive agent agreements are then terminated by Nationwide on July 1, 2020,

The exclusive agent contract provides that it can be canceled by the agent or Nationwide at any time, with or without cause. (Agency Agreement, Dkt. 10-1, at ECF 3.) Cancellation of the contract by either party triggers the agreement's "forfeiture-for-competition" clause (Am. Compl., Dkt. 10, ¶¶ 37–42), which provides, *inter alia*, for the forfeiture of an agent's Extended Earnings if:

> (1) [The] Agency or Agency's princ[i]pal either directly or indirectly, by and for themselves or as an agent for another, or through others as their agent, engage[s] in or [is] licensed as an agent, solicitor, representative, or broker, or in any way [is] connected with the fire, casualty, health, or life insurance business within one year following cancellation within a twenty-five (25) mile radius of [the] Agency's business location at the time of cancellation; or (2) [the] Agency fails to return in good condition, within ten days, all materials, records, and supplies furnished to [the] Agency by Nationwide during the course of this Agreement, together with any copies thereof; or (3) [a]fter cancellation of this Agreement, the Agency, or [its] principal or employees solicit[s] or attempt[s] to solicit existing policyholders at any time, or directly or indirectly induces, attempts to induce or assists anyone else in inducing or attempting to induce policy holders to lapse, cancel, or replace any insurance contract in force with Nationwide; [or] furnish[es] any other person or organization with the name of any policyholder of Nationwide so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

(Agency Agreement, Dkt. 10-1, at ECF 6–7 (emphasis added).)[4]

---

lose their Extended Earnings. Plaintiffs challenged Nationwide's elimination of the Extended Earnings benefit in Count 2 of the Amended Complaint, which the Court dismissed. (Minute Order, July 17, 2019.) In affirming that dismissal, the Circuit noted that "the only substantive limitation on Nationwide's reserved power to amend or terminate the deferred compensation benefit is the prohibition on 'alter[ing] or modify[ing] the rights or benefits received or credited prior to such change or modification[,]'" *DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co.*, 797, F. App'x 661, 662–63 (2d Cir. 2020) (summary order) (alterations in original) (record citation omitted), that "[t]he Extended Earnings benefit is not 'credited' to DeVivo until the termination of the agreement, . . . [and that] DeVivo received much more than sixty days' notice of termination or modification of the deferred compensation benefit plan, which was all that he bargained for in the parties' contract," *id.* at 663.

[4] However, as discussed *supra* n.3, because of Nationwide's elimination of the Extended Earnings benefit as of June 30, 2020, it would appear that this restrictive covenant is irrelevant with respect to retaining this benefit for any agent whose exclusive agent agreement is canceled on July 1, 2020 or thereafter.

3

**II.     Relevant Procedural History**

Plaintiffs' Amended Complaint alleges three claims: (1) breach of contract (Count 1) and (2) breach of the implied covenant of good faith and fair dealing (Count 2), both based on the unilateral elimination of the Extended Earnings benefit prior to the cancellation of Plaintiffs' exclusive agency agreement; and (3) breach of contract based on Nationwide's intent to enforce the forfeiture-for-competition provisions against agents who cancel their exclusive agent agreements or who allow Nationwide to cancel their exclusive agent agreements (Count 3). (*See generally* Am. Compl., Dkt. 10.)

On July 17, 2019, the Court granted, at oral argument, Defendant's first motion to dismiss, and dismissed this action in its entirety. (Minute Order, July 17, 2019.) Plaintiffs appealed. (*See* Notice of Appeal, Dkt. 35.)

On March 16, 2020, the Second Circuit affirmed the Court's judgment dismissing Counts 1 and 2, but vacated the Court's dismissal of Count 3, finding that Plaintiffs had sufficiently stated a breach of contract claim challenging the enforceability of the forfeiture-for-competition provision of the exclusive agent agreement. *DeVivo Assocs., Inc.*, 797 F. App'x at 663. Noting that under New York law "courts will enforce a contract provision that conditions receipt of postemployment benefits upon compliance with a restrictive covenant without regard to reasonableness unless the employee was terminated involuntarily and without cause," *id*. (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 859 N.E.2d 503, 506 (N.Y. 2006)), the panel found that "[t]he record is simply too thin to say, as a matter of law, that the choices offered by Nationwide through the [ACE] Program suffice to permit application of the employee choice doctrine." *Id*. The panel elaborated:

> Nationwide asserts that options provided by the [ACE] Program would confer on him the right to use policyowner data, but based on the allegations in the complaint

> (or incorporated therein), it may be that DeVivo already had that right. Every option exacts a price from DeVivo—in the form of a cash payment to Nationwide, a tax payment to the Internal Revenue Service, a restriction on DeVivo's right to use policyowner data for a period of [a] year, or some combination thereof. Thus, it is plausible that a reasonable person in DeVivo's position would feel compelled to forgo participation in the Program. If that were the case, DeVivo's termination could not be treated as voluntary, and the covenant would have to be evaluated for reasonableness, which cannot be done on this record and at this early stage of the action when no discovery has taken place.

*Id.* (internal quotation marks, citations, and alterations omitted).

Following remand of the case, Plaintiffs filed their preliminary injunction motion on April 14, 2020, seeking to have the Court enjoin Defendant's enforcement of certain provisions of the ATA that Plaintiffs had to sign by May 30, 2020 in order to participate in the ACE Program. (Dkt. 44.) More specifically, Plaintiffs asked that the Court enjoin enforcement of the ATA's prefatory clauses regarding ownership of the Nationwide policies, and the ATA's provisions relating to Plaintiffs' receipt of the 1099 form and the release of any and all claims against Nationwide. (Plaintiffs' Memorandum of Law ("Pls.' MOL"), Dkt. 44-1, at 3.)[5] Nationwide opposed Plaintiffs' motion (Defendant's Opposition ("Def.'s Opp."), Dkt. 45), which was fully briefed on May 5, 2020. Oral argument on the motion was scheduled for May 19, 2020. (Order, Apr. 28, 2020.)

However, on May 11, 2020, Plaintiffs moved for leave to file a Second Amended Complaint (Dkt. 49), and included a Proposed Second Amended Complaint, which added a fourth Count alleging that the 1099-related provisions of two of the ACE Program options should be declared illegal, as violating federal tax law. (Proposed Second Amended Complaint ("PSAC"), Dkt. 49-2, ¶¶ 81–88.) In light of this filing, the Court rescheduled the May 19, 2020 oral argument

---

[5] However, at the May 26, 2020 oral argument held on the motion, Plaintiffs indicated, in response to the Court's questions, that they were amenable to an injunction that simply prevented Nationwide from terminating the existing exclusive agent contract during the pendency of this lawsuit.

5

to May 26, 2020, to allow Defendant time to respond to Plaintiffs' motion to amend the complaint and to allow the parties to also present oral argument about that motion.[6] (Order, May 12, 2020.) Oral argument on both motions was held on May 26, 2020. (*See* Minute Order, May 26, 2020.)

## LEGAL STANDARD

To secure a preliminary injunction ("PI"), "the movant has to show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 2020 WL 2516650, at *7 (2d Cir. May 18, 2020) (internal quotation marks and footnote omitted).[7] "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012) (summary order) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To satisfy that requirement, a plaintiff "must demonstrate that

---

[6] The Court orally denied Plaintiffs' motion to file the proposed Second Amended Complaint for the reasons stated on the record.

[7] As discussed *supra* n.5, Plaintiffs are amenable to the Court's consideration of an injunction preserving the status quo, rather than one that eliminates the ATA provisions. Generally, "[c]ourts refer to preliminary injunctions as prohibitory or mandatory." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). While a "[p]rohibitory injunction[] maintain[s] the status quo pending resolution of the case[,] mandatory injunctions alter it." *Id.* Mandatory injunctions are also subjected to a "heightened legal standard," and, with respect to the second prong of the PI standard, the movant must show "a clear or substantial likelihood of success on the merits," *id.* at 37 (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)), as opposed to a prohibitory injunction that only requires "a likelihood of success on the merits," *id.* (citing *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). The Court need not decide whether the requested relief is a prohibitory injunction or a mandatory injunction, nor does it need to separately consider the two forms of relief requested, because, for the reasons contained herein, the Court finds that Plaintiffs have failed to establish that they will be subjected to irreparable harm, a prerequisite under both standards.

absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (explaining that "irreparable injury" is defined as "harm to the plaintiff's legal interests that could not be remedied after a final adjudication"). "Courts must pay particular attention to whether the remedies available at law, such as monetary damages are inadequate to compensate for the injury." *WPIX, Inc.*, 691 F.3d 275, 285 (internal quotation marks, citations, and alterations omitted).

## DISCUSSION

In seeking a PI, Plaintiffs rely on the Second Circuit's determination that they have sufficiently alleged facts from which it can be inferred that Plaintiffs' impending termination as an exclusive agent by Nationwide is involuntary (Pls.' MOL, Dkt. 44-1, at 1 (quoting *DeVivo Assocs. Inc.*, 797 F. App'x at 663)), and argue that "[i]n order to make informed decisions in response to Nationwide's actions, these Plaintiffs (and every similarly-situated exclusive agent) need a determination with respect to whether Nationwide's ACE Program is, in effect, a 'constructive discharge,' as the Second Circuit has suggested it may be, thereby rendering the forfeiture provision unenforceable" (*Id.* at 2). Thus, Plaintiffs contend, "absent preliminary relief, the DeVivo Plaintiffs must execute the [ATA] by **May 30, 2020** or face the threat of termination and enforcement of the forfeiture provision." (*Id.* at 2–3 (emphasis in original).) Plaintiffs further argue that their "legal interests will be irreparably harmed" because the proposed ATA contains a release of all claims against Nationwide, which will "preempt[] and ***preclude[]*** a final adjudication" on the declaratory relief Plaintiffs seek, as well as "any action by the DeVivo Plaintiffs to seek relief from the overpricing" alleged in Plaintiffs' motion. (*Id.* at 21 (emphasis in

7

original).) At oral argument, Plaintiffs expanded their claim of irreparable harm to the theory that should Nationwide terminate their exclusive agent contract, and if they are required to abide by its restrictions on post-termination competition, Plaintiffs will go out of business.[8]

The Court finds that Plaintiffs cannot establish that they are entitled to any preliminary relief for one simple reason: under the exclusive agent contract, Nationwide has, and has always had, the right to unilaterally terminate Plaintiffs at any time and without cause, thereby triggering the restrictive covenant in that agreement.[9] While this fact does not extinguish Plaintiffs' claim challenging the reasonableness of that restrictive covenant, it *does* undermine their claim for preliminary relief, which is based on Plaintiffs' allegations that the ACE Program options that Nationwide is offering are unfair (or illegal, as per the proposed Second Amended Complaint) and their claim that their "legal interests" will be irreparably harmed by having to choose one of these options. However, Nationwide was never required to offer *any* alternative to termination or any transition option. Therefore, even though Plaintiffs have successfully alleged that they are being involuntarily terminated—either because Plaintiffs will be involuntarily terminated on July 1, 2020 if they do not join the ACE Program or because the ACE Program does not present any genuine choices—that fact alone does not warrant a PI, and certainly not one that allows Plaintiffs to choose an ACE option, but not be subject to some of its key provisions.

---

[8] The Amended Complaint also generically alleges that "Nationwide's recently announced plan for exclusive agents who resist Nationwide's pressure and refuse to select an ACE option—putting the agent out of business after the July 1, 2020 termination using non-compete and non-solicitation clauses ([Am. Compl., Dkt. 10,] ¶¶ 37–42[])—is unreasonable as a matter of law." (Am. Compl., Dkt. 10, ¶ 78.)

[9] Though not discussed in the Second Circuit's summary order, the Court does not construe its ruling as extending to the one-year non-compete restriction in Option 3 of the ACE Program, which is not the subject of, nor referenced in, Count 3 of the Amended Complaint. (*See* Am. Compl., Dkt. 10, ¶¶ 77–80.)

In order to obtain preliminary relief, Plaintiffs must demonstrate that they are likely to succeed on the merits of their claim that the restrictive covenant under the exclusive agent agreement is unreasonable—*this* is the gravamen of Count 3—or that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation." *See Ventura de Paulino*, 2020 WL 2516650, at *7. While the Court assumes without deciding, based on the Circuit's ruling, that Plaintiffs have presented "a sufficiently serious question" as to whether the restrictive covenant in the exclusive agent agreement is unreasonable, the Court finds that they have failed to demonstrate irreparable harm, which is "the single most important prerequisite for the issuance of a preliminary injunction." *Singas Famous Pizza Brands Corp.*, 468 F. App'x at 45 (quoting *Faiveley Transp. Malmo AB*, 559 F.3d at 118).[10] Here, Plaintiffs assert that they are being forced to choose one of the ACE Program options and that doing so will result in Plaintiffs being precluded by the ATA's release provision from pursuing their surviving claim in this case. While it appears to be correct that if Plaintiffs sign a contract joining the ACE Program, they could be barred from continuing their claim against Nationwide regarding the unreasonableness of the forfeiture-for-competition provision of the exclusive agent agreement, that does not mean that Plaintiffs are losing a protectable "legal interest." First, Plaintiffs have a way of preserving their claim against Nationwide: by not opting into the Ace Program and allowing themselves to be terminated by Nationwide under the exclusive agent agreement, which, to the Court's knowledge, has no release barring suit against Nationwide. Furthermore, as discussed *infra*, Plaintiffs can also terminate the agreement themselves, and, if they do so before June 30, 2020, it appears that they

---

[10] Because of this ruling, the Court need not, and does not, resolve whether Plaintiffs have demonstrated "a balance of hardships tipping decidedly" in its favor. *Ventura de Paulino*, 2020 WL 2516650, at *7.

9

will retain their Extended Earnings.  Second, as previously discussed, because Nationwide has no obligation to offer any alternative to its unilateral termination of the exclusive agent agreement,[11] Plaintiffs have no right to opt into the ACE Program but not be bound by its terms, which include signing a release.  Thus, Plaintiffs cannot show that they are irreparably harmed by the loss of a legal interest that they still possess.

Plaintiffs also have not shown they will suffer irreparable harm by being put out of business.  While "[c]ourts have found irreparable harm when plaintiffs allege that their business would be shut down entirely if relief is not granted," *Amato v. Elicker*, No. 20-CV-464 (MPS), 2020 WL 2542788, at *6 (D. Conn. May 19, 2020) (collecting Second Circuit cases), a preliminary injunction "should not issue upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent, irreparable injury," *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989); *see Sunni LLC v. Edible Arrangements, Inc.*, No. 14-CV-461 (KPF), 2014 WL 1226210, at *11 (S.D.N.Y. Mar. 25, 2014) (collecting cases); *see also Auto Sunroof of Larchmont, Inc. v. Am. Sunroof Corp.*, 639 F. Supp. 1492, 1494 (S.D.N.Y. 1986) (finding no irreparable harm where "[i]nstead of presenting concrete data on how . . . close it already is to business failure, plaintiff offers only the self-serving statement of its President that its business will collapse.  With nothing more than this statement, plaintiff's claim is speculative"); *Christ Gatzonis Elec. Contractor, Inc. v. N.Y.C. Sch. Const. Auth.*, No. 93-CV-2418 (CPS), 1993 WL 262715, at *5–6 (E.D.N.Y. July 2, 1993) (finding no irreparable harm where plaintiffs "made only general

---

[11] Notably, the Circuit's decision did not in any way suggest that Nationwide should or could be barred from, in effect, requiring its exclusive agents to choose between the ACE Program or unilateral termination; rather, the panel found that the alleged absence of any real choice sufficiently stated a claim based on involuntary termination and an unreasonable restrictive covenant.

allegations that . . . [their] business will collapse[,]" and it appeared that "the business may survive out of capital or from other revenues").

In *Sunni*, the plaintiffs requested a preliminary injunction, claiming irreparable harm based on the destruction of the plaintiffs' retail Edible Arrangements franchise stores. The court denied that request because the plaintiffs had "submitted no evidence regarding their current capitalization, their annual or monthly profits, or their ability to withstand a significant loss in business, or even closure, for a short period of time." *Sunni*, 2014 WL 1226210, at *11. The court also found insufficient one plaintiff's declaration that if he lost access to 60% of his customers, he would be forced to close his stores. *Id.*

Here, Plaintiffs have put forth *no* evidence—no documentation of "current capitalization, . . . annual or monthly profits, or . . . ability to withstand a significant loss in business, or even closure, for a short period of time," *cf. id.*—not even a declaration about Plaintiffs' breaking point with respect to continuing their business, as in *Sunni*. *See also Soffer v. Queens Coll. of City Univ. of N.Y.*, No. 87-CV-1695 (TCP), 1988 WL 36954, at *1 (E.D.N.Y. Apr. 14, 1988) ("[I]n a business setting, only a real threat that a party will have to discontinue doing business is a sufficient injury for a finding of irreparable harm."). Instead, Plaintiffs simply argue that the effect of the restrictive covenant in the exclusive agent agreement, combined with Plaintiffs' loss of approximately $692,000 in Extended Earnings, will destroy their business.[12] Yet, despite operating for over 40 years, Plaintiffs provide no information whatsoever regarding the anticipated loss of business or revenue that will be caused by the termination of the exclusive agent agreement or the restrictive covenant. Nor do Plaintiffs explain or demonstrate why they will not be able to carry on or resume

---

[12] This argument was only made by Plaintiffs' counsel at the May 26, 2020 oral argument and appears nowhere in their moving papers. (*See* Pls.' MOL, Dkt. 44-1, at 20–21; Dkt. 47, at 1–4.)

11

their business following the one-year non-compete period or while otherwise complying with the restrictive covenant. *See Christ Gatzonis Elec. Contractor, Inc.*, 1993 WL 262715, at *5–6. Indeed, the only evidence that *is* before the Court suggests that Plaintiffs can, in fact, collect their approximately $692,000 in Extended Earnings if *they* cancel the exclusive agent agreement *before* June 30, 2020 and then abide by the restrictive covenant thereafter. Thus, Plaintiffs have failed to show that the destruction of their business is likely and imminent if a PI is not granted. *See Amato*, 2020 WL 2542788, at *6 (finding, in the context of the COVID-19 epidemic, that a bar's challenge to state and municipal shut-down orders did not allege sufficient facts to make a "clear showing that irreparable injury is *likely* in the absence of an injunction . . . [since] they do not allege or testify to any facts suggesting that permanent closure of their business is likely or imminent") (emphasis in original) (internal quotation marks and citation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (collecting cases).

      Plaintiffs also have failed to demonstrate that any business losses they might suffer cannot be compensated with money damages when this case is finally resolved. *Compare Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (finding no irreparable injury where lost profits could be easily calculated from the previous years' financial records), *with Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 436 (2d Cir. 1993) (finding that calculating "lost profits would be highly speculative" for a "two-year-old dealership that only began to show a profit [the previous year and] lacks a track record from which to extrapolate"). *See also Sunni*, 2014 WL 1226210, at *9 (S.D.N.Y. Mar. 25, 2014) ("Courts in this Circuit have observed that irreparable harm is found where, but for the grant of equitable relief, there is a substantial chance that upon

the final resolution of the action the parties *cannot be returned to the position they previously occupied*.") (emphasis in original) (internal quotation marks and citations omitted). Here, Plaintiffs have proffered no evidence showing that any harm to, or diminution in, Plaintiffs' business could not be remedied with money damages at the conclusion of this case, or that their business could not be restored to its pre-termination position.

Accordingly, because Plaintiffs have failed to demonstrate that they will suffer irreparable harm if a PI is not granted, the Court denies their motion for preliminary relief.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 29, 2020
       Brooklyn, New York